IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SYSCO CHARLOTTE, LLC,              )
                                   )
            Plaintiff,             )
                                   )
    v.                             )      1:18CV247
                                   )
BRANDY LEE COMER, et al.,          )
                                   )
            Defendants.            )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Currently before this court are Plaintiff's motion to remand, (Doc. 8), and Defendants' motion to dismiss. (Doc. 5.) Plaintiff asks this court to remand the case to state court pursuant to a forum selection clause in the credit agreement between Plaintiff and certain Defendants. Defendants move to dismiss certain of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, this court finds that Plaintiff's motion to remand should be denied because Defendants did not waive their right to remove this dispute to federal court. This court further finds that Defendants' motion to dismiss should be granted in part and denied in part as set forth herein.

# I.   BACKGROUND & PROCEDURAL HISTORY

Plaintiff Sysco Charlotte, LLC sells food and restaurant supplies. (Complaint ("Compl.") (Doc. 2) ¶ 1.) Defendants are individuals and corporations involved in the restaurant business. (Id. ¶ 6.) Defendant Comer Khori LLC ("Debtor") took out a line of credit with Plaintiff, secured by certain assets of Debtor. (See Defs.' Not. of Removal ("Removal Not.") (Doc. 1) at 38; Doc. 8-1.)[1] This line was personally guaranteed by Defendants Brandy Lee Comer and Fareed Al-Khori (collectively, the "Individual Defendants"). (See Compl. Ex. B (Doc. 2-2).)[2] Defendants purchased food and other supplies for their restaurant business from Plaintiff using the line of credit. (Compl. (Doc. 2) ¶¶ 7-9.) The sales included "food purchased

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

[2] The guarantee attached to Defendants' notice of removal is identical to the document attached to the Complaint. (Compare Removal Not. (Doc. 1) at 38, with Compl. Ex. B (Doc. 2-2).) This guarantee appears to be dated October 2, 2010, lists the trade name "Iron Hen Café," and is signed by Defendants Comer and Al-Khori. Plaintiff has also filed a copy of a different guarantee dated April 20, 2016 that lists the trade name "Fresh Local Good Food Group," but this guarantee is signed only by Defendant Comer. (See Doc. 8-2.) Each guarantee lists the legal name of the company as Comer Khori LLC. To the extent relevant to this Memorandum Opinion and Order, this court will refer to the Iron Hen Café guarantee that is signed by each Individual Defendant.

under the Federal Perishable Agricultural Commodities Act", or PACA. (Id. ¶ 10.)

According to the Complaint, the Individual Defendants are the managing members of Debtor and each of the following entities: Comer-Khori, LLC[3]; Ferrell Group LLC; Murray-Comer-Khori, LLC; HJHN Properties, LLC; and Barn 3203, LLC (collectively, the "LLC Defendants"). (Id. ¶¶ 3-4.)

The credit agreement[4] between Plaintiff and Debtor includes the following provision:

> The parties agree to designate the federal and state courts of North Carolina as the exclusive place of venue and jurisdiction for any dispute between them; and Customer waives any right Customer may have to transfer or change venue regarding Customer's obligations to Sysco. . . . Applicant and guarantors agree to waive exemptions from execution and agree

_____

[3] Although Plaintiff appears to refer to Debtor and "Comer-Khori, LLC" interchangeably, (see, e.g., Pl.'s Br. Supp. Mot. to Remand ("Pl.'s Remand Br.") (Doc. 10) at 3), the Complaint lists these entities as separate Defendants. The credit agreement and account statement each use the name "Comer Khori LLC" (d/b/a Fresh Local Good Food Group), (see Docs. 2-1, 8-1), and this court finds no evidence in the record to suggest any involvement by a "Comer-Khori, LLC."

[4] The document is entitled "Terms, Conditions & Security Agreement," but the agreement refers to itself as the "Credit Agreement" and sets forth payment terms and procedures. (See Doc. 8-1.) The agreement also grants a security interest as collateral. (Id.) This court will refer to the agreement as the "credit agreement" throughout, while recognizing that it also incorporates an agreement regarding security for extensions of credit.

> that venue shall be proper in any forum selected by
> Sysco.

(Doc. 8-1. (emphasis added).) The personal guarantee contains a

similar forum selection clause.[5] (Compl. Ex. B (Doc. 2-2).)

Plaintiff alleges that Defendants have breached the credit

agreement by failing to pay and that Defendants have

"appropriated the proceeds of the PACA food to their own use."[6]

(Compl. (Doc. 2) ¶ 15.) Plaintiff brings the following claims:

---

[5] The clause states, in relevant part:

> The parties choose the law of the state specified
> in the Customer Agreement to govern all aspects of
> this guaranty and . . . designate the federal and
> state courts of that state as the exclusive place of
> venue and jurisdiction for any dispute between them,
> and guarantor waives any right they might [or] may
> have to transfer or change venue regarding guarantor's
> obligations to SYSCO.

(See Compl. Ex. B (Doc. 2-2).) For purposes of analyzing the
motion to remand, this court finds that the forum selection
clause in the credit agreement is broader and that, if the
credit agreement clause does not compel remand, neither will the
guarantee's forum selection clause.

[6] Specifically, PACA requires that merchants who purchase
food from suppliers and sell to the public hold sale proceeds in
trust "until full payment of the sums owing in connection with
such transactions has been received by such unpaid suppliers,
sellers, or agents." 7 U.S.C. § 499e(c)(2); see also R Best
Produce, Inc. v. Shulman-Rabin Mktg. Corp., 467 F.3d 238, 241-42
(2d Cir. 2006) ("The purpose of the trust is to increase the
legal protection for unpaid sellers and suppliers of perishable
agricultural commodities until full payment of sums due have
been received by them." (internal quotation marks and citation
omitted).

account stated; breach of contract; breach of the implied duty

of good faith and fair dealing; unjust enrichment; fraud;

constructive fraud; breach of fiduciary duty; conversion; and

unfair or deceptive trade practices. (Id. ¶¶ 18-46.) Plaintiff

also argues that the Individual Defendants are personally liable

for the acts of Debtor and the LLC Defendants based on both

piercing the corporate veil and on the individual Defendants'

personal guarantee. (Id. ¶¶ 47-49.)

   Plaintiff originally filed suit in the District Court of

Cabarrus County, and Defendant Brandy Lee Comer later removed

the action to this court as a federal-question case. (See

Removal Not. (Doc. 1).) Plaintiff filed a motion to remand,[7]

(Doc. 8), and a brief in support of that motion, (Pl.'s Br.

---

[7] This case was removed to federal court on March 27, 2018, (see Removal Not. (Doc. 1)), and Plaintiff filed its motion to remand on April 26, 2018. Therefore, this court finds that the motion to remand was timely filed within the 30-day period specified in 28 U.S.C. § 1447(c). This court further finds that Plaintiff has not waived its right to seek remand. When "a party undertakes affirmative action in the federal district court, she has acquiesced in the federal court's jurisdiction and waived objection to the removal." Lanier v. Am. Bd. of Endodontics, 843 F.2d 901, 904 (6th Cir. 1988). However, a district court has "broad discretion" to decide whether a waiver has occurred. Id. at 905. Here, because Plaintiff has merely responded to the motion to dismiss and filed other administrative motions, this court finds that Plaintiff has not acquiesced to jurisdiction and has not waived the right to seek remand. See Lapoint v. Mid-Atl. Settlement Servs, Inc., 256 F. Supp. 2d 1, 3 (D.D.C. 2003) ("[M]erely engaging in offensive or defensive litigation . . . does not forfeit the right to a remand.").

Supp. Mot. to Remand ("Pl.'s Remand Br.") (Doc. 10).) Defendants filed a response objecting to remand. (See Doc. 17.) Defendants also moved to dismiss certain claims in the Complaint pursuant to Rule 12(b)(6), (Doc. 5), and submitted a brief in support of that motion, (Defs.' Br. in Supp. of Mot. to Dismiss ("Defs.' Br.") (Doc. 7).) Plaintiff responded opposing the motion to dismiss, (Doc. 12), and Defendants did not file a reply.

## II. **MOTION TO REMAND**

### A.   **Standard of Review**

"The burden of establishing federal jurisdiction is placed upon the party seeking removal." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). Out of "[d]ue regard for the rightful independence of state governments . . . [federal courts must] scrupulously confine their own jurisdiction to the precise limits which the statute has defined." Healy v. Ratta, 292 U.S. 263, 270 (1934). Matters can be removed to federal court only when they could have been brought in federal court in the first instance. See 28 U.S.C. § 1441(a). For example, federal courts have jurisdiction over any case that implicates a question of federal law, and such a case can therefore generally be removed to federal court. See 28 U.S.C. § 1331.

However, a contractual forum selection clause is enforceable absent fraud or bad faith. See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972). It is also well-settled that a party may waive its right to remove an otherwise removable case through a forum selection clause. See Bartels v. Saber Healthcare Grp., Inc., 880 F.3d 668, 674–75 (4th Cir. 2018) (collecting cases); accord FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC, 626 F.3d 752, 755 (4th Cir. 2010). The burden of proving that a forum selection clause waives the right to remove falls on the party seeking to enforce the clause. See, e.g., Bartels, 880 F.3d at 680–81 (stating that a forum selection clause blocking removal "essentially operates as an affirmative defense to removal" and, therefore, the party invoking the affirmative defense bears the burden of proof); Docs Billing Sols., LLC v. GENETWORx LLC, Civil No. No. 3:18-cv-35 (MHL), 2018 WL 4390786, at *3 (E.D. Va. Aug. 30), Report and Recommendation adopted by 2018 WL 4390739 (E.D. VA. Sept. 14, 2018).

There are two types of forum selection clauses: permissive and mandatory. "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere. A mandatory clause, in contrast, dictates an exclusive forum for litigation under the contract." Glob. Satellite Commc'n Co. v.

<u>Starmill U.K. Ltd.</u>, 378 F.3d 1269, 1272 (11th Cir. 2004).

Federal law governs the question of whether a forum selection clause is valid. <u>See</u> <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 32 (1988). State contract law, on the other hand, governs the interpretation and construction of the clause itself. <u>See, e.g.</u>, <u>Collins v. Mary Kay, Inc.</u>, 874 F.3d 176, 181–83 (3d Cir. 2017); <u>Weber v. PACT XPP Techs., AG</u>, 811 F.3d 758, 770–71 (5th Cir. 2016).

### B.  <u>Arguments</u>

Plaintiff argues, in summary, that the term "venue" should be interpreted according to its ordinary meaning and that Defendants have waived the right to remove this case to federal court because that would entail moving the case to a different "place" from where it was initially filed. (Pl.'s Remand Br. (Doc. 10) at 6.) Plaintiff further contends that the final sentence of the forum selection clause gives Plaintiff the exclusive right to select the court in which a dispute is litigated. (<u>Id.</u>) In response, Defendants argue that the forum selection clause "does not operate as a waiver of Defendants' right of removal" because it restricts only transfers <u>outside of</u>, not among, the specified forum courts (North Carolina state and federal courts). (Doc. 17 at 6.) Defendants further assert that Plaintiff's proposed meaning of venue "stands in direct

conflict with the Federal Rules of Civil Procedure" and that, even if this court finds the word ambiguous, "it must be construed against the drafter — here, Plaintiff." (Id. at 9–11.)

## C. **Analysis**

Here, the forum selection clause is mandatory in the sense that any dispute between the parties must be litigated in North Carolina state or federal court. Defendants also waive any right "to transfer or change venue . . . and agree that venue shall be proper in any forum selected by" Plaintiff. While Plaintiff urges this court to find that these two clauses preclude Defendants from requesting any change to the initial forum selected by Plaintiff, (Pl.'s Remand Br. (Doc. 10) at 5–7), including by removing the case from state to federal court, this court cannot agree. This court finds that the word "venue" has a specialized meaning pursuant to federal and state statute and that this meaning is more specific than simply the place or location of a courthouse. Rather, the term "venue" refers to the judicial district or districts where a certain case may properly be brought. See 28 U.S.C. § 1391; see also N.C. Gen. Stat. § 1-82. And the phrase "transfer or change venue" refers to either (1) a motion under 28 U.S.C. § 1404 to transfer the case to a different federal venue that would have been proper

initially, or (2) a motion pursuant to N.C. Gen. Stat. § 1-83 to change venue to a different, proper North Carolina county.[8]

Applying these findings to the forum selection clause here, this court finds that Defendants waived only their right to make a motion to transfer or change venue from the initial court selected by Plaintiff, pursuant to either 28 U.S.C. § 1404 or N.C. Gen. Stat. § 1-83, assuming that court was a North Carolina state or federal court.[9] For example, Defendants could not now move to transfer this case to the Western District of North Carolina because they have waived that right in the credit agreement. Defendants did not, however, unconditionally agree that Plaintiff's choice of forum would be final.

Even assuming for argument that the forum selection clause is ambiguous and could reasonably be interpreted as <u>either</u> waiving the right to transfer venue <u>or</u> waiving the right to

---

[8] While both the federal and state statutes are entitled "Change of venue," the federal statute states that "a district court may <u>transfer</u>" while the North Carolina statute provides that "[t]he court may <u>change</u>." <u>Compare</u> 28 U.S.C. § 1404, <u>with</u> N.C. Gen. Stat. § 1-83.

[9] Because the forum selection clause initially provides for mandatory jurisdiction in North Carolina state or federal courts, it would be inconsistent for the remainder of the clause to waive Defendants' right to remove <u>to</u> a North Carolina court if a lawsuit was initially filed in an improper out-of-state forum.

change the forum in any way,[10] this court finds that the language should be construed against Plaintiff under North Carolina law. See, e.g., Chavis v. So. Life Ins. Co., 318 N.C. 259, 262, 347 S.E.2d 425, 427 (1986) ("One of the most fundamental principles of contract interpretation is that ambiguities are to be construed against the party who prepared the writing."). In other words, Plaintiff, as the drafter of the credit agreement, bears the burden of clarifying the meaning of any ambiguous terms. If Plaintiff believed the word "venue" referred to its colloquial meaning of "place," Plaintiff should have used the word "place" to eliminate any ambiguity.

Plaintiff relies solely on arguments relating to contract interpretation and does not appear to contend that, if this court should reject its preferred meaning of "venue," this court should nevertheless find that Defendants have waived their right to remove. This court agrees, but also finds it necessary to distinguish the forum selection language at issue here from two situations where courts often find that a party has waived its

---

[10] Plaintiff, by arguing that its own interpretation of the contractual language is the "most reasonable," (Pl.'s Remand Br. (Doc. 10) at 6-7), seems to implicitly admit that other interpretations of the word "venue" are in fact reasonable.

right to remove. First, courts frequently find that a forum selection clause in which Party A agrees to submit to <u>any</u> court of competent jurisdiction selected by Party B constitutes a waiver of Party A's right to remove. <u>See, e.g.</u>, <u>Foster v. Chesapeake Ins. Co., Ltd.</u>, 933 F.2d 1207, 1216 (3d Cir. 1991) (the clause stated that one party would "submit to the jurisdiction of any court of competent jurisdiction within the United States" at the request of the other party). Similarly, when one party "waives any objection it may have to the laying of venue of any" lawsuit arising from the agreement, that party waives the right to remove. <u>Waters v. Browning-Ferris Indus., Inc.</u>, 252 F.3d 796, 797 (5th Cir. 2001). However, the clause at issue here is different. Defendants agree only that <u>venue</u> shall be proper and waive only their right to make a motion to transfer or change venue pursuant to 28 U.S.C. § 1404, while retaining other objections. Had the parties wished to agree that Plaintiff would have the absolute right to choose the forum court, they would have specified that Defendants waived any objections and submitted to the exclusive jurisdiction of the

chosen court.[11] Therefore, this line of cases does not govern the inquiry here.

Second, some decisions apply the ordinary or plain meaning of "transfer" to interpret a forum selection clause. For example, in FindWhere, the Fourth Circuit confronted a forum selection clause stating that "any dispute or legal action brought by either party arising out of or relating to this Agreement . . . shall lie exclusively in, or be transferred to, the courts of the State of Virginia." 626 F.3d at 754. The court found that the phrase "or be transferred to" encompassed any geographic movement of the proceedings, including a transfer between different state courts. Id. at 756. The Eleventh Circuit, interpreting a clause pursuant to which one party "waive[d] any right to transfer any such action filed in any court to any other court," similarly found that the clause referred to any movement or conveyance and thus waived the right to remove to federal court. See Ocwen Orlando Holdings Corp. v.

---

[11] This court further views the phrase "venue shall be proper in any forum selected by Sysco" as ambiguous and potentially inconsistent with the mandatory forum provision. It cannot be true that venue is proper in any forum that Plaintiff selects, when the credit agreement itself states that venue shall lie exclusively in North Carolina state or federal court. Therefore, the "proper venue" stipulation appears to be subject to an earlier portion of the forum selection clause and is not properly viewed as an independent provision that waives Defendants' statutory right to remove.

<u>Harvard Prop. Trust, LLC</u>, 526 F.3d 1379, 1381 (11th Cir. 2008).
However, in neither of these cases did the forum selection
clause use the word "transfer" specifically in relation to the
word "venue"; rather, in each case, the word "transfer" was used
in the sense of transferring the dispute or action. Here, this
court finds that the forum selection clause uses "transfer"
solely to modify the object noun "venue" and that this
combination imbues the phrase with a particular meaning that is,
at the least, reasonable and sufficient to render the provision
ambiguous. Even applying the ordinary, plain meaning of
"transfer," this court does not find that Defendants have waived
their right to remove. Therefore, Plaintiff's motion to remand
will be denied.[12]

## III. <u>**SUBJECT MATTER JURISDICTION**</u>

While this court has determined that removal was not barred
by the forum selection clause, this court must still verify that
it can properly exercise subject matter jurisdiction over the
dispute. This court may do so independently and, if it
determines that it lacks jurisdiction, must dismiss or remand

---

[12] Because this court finds that Plaintiff's motion to
remand should be denied, Plaintiff's request for costs and
attorney's fees under 28 U.S.C. § 1447(c) will also be denied.

the case. See Arbaugh v. Y&H Corp., 546 U.S. 500, 506–07 (2006);
Fed. R. Civ. P. 12(h)(3).

Defendants invoke federal-question jurisdiction pursuant to
28 U.S.C. § 1331 and argue that, because Defendants allegedly
misappropriated funds that were designated to a PACA trust
created and governed by federal law, a federal district court
has original jurisdiction over at least the constructive fraud,
breach of fiduciary duty, and conversion claims. (Removal Not.
(Doc. 1) at 3–4.) Plaintiff appears to concede that certain
claims implicate PACA, but argues that, if this court were to
dismiss those claims, it should remand the case to state court.
(Doc. 12 at 3.)

Federal-question jurisdiction exists when either (1) the
right to relief arises directly under federal law, or (2) "the
case's resolution depends on resolution of a federal question
sufficiently substantial to arise under federal law within the
meaning of 28 U.S.C. § 1331." Ormet Corp. v. Ohio Power Co., 98
F.3d 799, 806 (4th Cir. 1996). It must be apparent from the face
of the complaint that the plaintiff's claims cannot be resolved
without reference to federal law or to the U.S. Constitution.
Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for
So. Cal., 463 U.S. 1, 8–9 (1983).

Here, Plaintiff seeks to recover amounts due under the credit agreement, which allegedly include amounts that Defendants were required to hold in trust for Plaintiff pursuant to 7 U.S.C. § 499e(c)(2). Plaintiff further sues for constructive fraud and breach of fiduciary duty, arguing specifically that Defendants violated duties imposed by PACA. (See Compl. (Doc. 2) ¶¶ 34-40.) This court has no trouble finding that the constructive fraud, breach of fiduciary duty, and possibly other claims all implicate a substantial question of federal law and therefore provide federal-question jurisdiction. See, e.g., Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc., 222 F.3d 132, 138 (3d Cir. 2000). This court may exercise supplemental jurisdiction over any state-law claims that "form part of the same case or controversy" as Plaintiff's federal claims. 28 U.S.C. § 1367. Here, all of Plaintiff's claims can be traced to the same set of facts: Plaintiff's sale of food to Defendants. Therefore, this court has subject matter jurisdiction over all claims in this matter.

## IV.  **MOTION TO DISMISS**

Defendants move to dismiss the following claims for failure to state a claim pursuant to Rule 12(b)(6): constructive fraud; breach of fiduciary duty; conversion; fraud; unfair and

deceptive trade practices ("UDTPA"); and piercing the corporate veil. (Defs.' Br. (Doc. 7) at 2.)

As noted above, this court has supplemental jurisdiction over pendant state-law claims. A federal court sitting in diversity or supplemental jurisdiction generally applies the relevant substantive law of the state in which the court sits, while applying federal procedural law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 72-73, 79-80 (1938); Hanna v. Plumer, 380 U.S. 460, 465-66 (1965); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (holding that federal courts are "bound to apply state law" to pendant claims); In re Exxon Valdez, 484 F.3d 1098, 1100 (9th Cir. 2007) (finding that Erie's central holding applies to supplemental jurisdiction cases).

In contract disputes, courts apply the law of the state where the parties entered into the contract or where delivery was made. Mut. Life Ins. Co. of N.Y. v. Johnson, 293 U.S. 335, 339 (1934); see also Roomy v. Allstate Ins. Co., 256 N.C. 318, 322-23, 123 S.E.2d 817, 820 (1962) (holding that the law of the state where a contract is entered into governs its interpretation). Here, it appears that the agreement between Plaintiff and Defendants was entered into in North Carolina and the credit agreement itself states that North Carolina law shall "govern all aspects of this credit application and agreement and

all transactions between" the parties. (Removal Not. (Doc. 1) at 38.) Therefore, this court finds that North Carolina law governs the claims in this case.

## A.    **Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In other words, the plaintiff must plead facts that "allow[] the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

When ruling on a motion to dismiss, this court must accept the complaint's factual allegations as true. Iqbal, 556 U.S. at 678. Further, "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). Despite this deferential standard, a court will not accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, [will] not suffice."
Iqbal, 556 U.S. at 678.

**B.    Fraud and Constructive Fraud**

The "essential elements of factual fraud are: (1) [f]alse
representation or concealment of a material fact, (2) reasonably
calculated to deceive, (3) made with intent to deceive, (4)
which does in fact deceive, (5) resulting in damage to the
injured party." Terry v. Terry, 302 N.C. 77, 82, 273 S.E.2d 674,
677 (1981) (citation omitted). The plaintiff's reliance on any
false representation or material concealment "must be
reasonable." State Props., LLC v. Ray, 155 N.C. App. 65, 74, 574
S.E.2d 180, 186 (2002). A plaintiff claiming fraud "must allege
with particularity all material facts and circumstances
constituting the fraud." Carver v. Roberts, 78 N.C. App. 511,
513, 337 S.E.2d 126, 128 (1985).

The related claim of constructive fraud arises "where the
parties to a transaction have a special confidential or
fiduciary relation which affords the power and means to one to
take undue advantage of, or exercise undue influence over the
other." Rhodes v. Jones, 232 N.C. 547, 548, 61 S.E.2d 725, 726
(1950). "A claim of constructive fraud does not require the same
rigorous adherence to elements as actual fraud." Terry, 302 N.C.
at 83, 273 S.E.2d at 677.

Here, the fraud claim is premised on Plaintiff's allegation
that Defendants concealed a material change in their financial
condition — specifically, the fact that Defendants had become
insolvent — and that Plaintiff reasonably relied on this
misrepresentation to its detriment by continuing to sell food
and other items to Defendants on credit. (Compl. (Doc. 2) ¶¶ 26–
33.) Defendants argue that the failure to specifically state
"who made the alleged misrepresentation, who [it was] made to,
or when or where [it was] made" is fatal to Plaintiff's fraud
claim. (Defs.' Br. (Doc. 7) at 11.) But Defendants miss the
point. When, as here, the allegation is that one party has
concealed a material fact rather than affirmatively
misrepresenting such a fact, it is impossible for a plaintiff to
point to any specific time or place where the alleged
concealment "occurred." If the underlying allegation is that
Defendants failed to disclose, then Plaintiff is arguing that
there was never any affirmative misrepresentation to anyone.

However, when a claim for actual fraud is based on
concealment, or failure to disclose, the defendant must be under
a duty to disclose. See Harton v. Harton, 81 N.C. App. 295, 297,
344 S.E.2d 117, 119 (1986). Such a duty arises in three
situations: (1) a fiduciary relationship, (2) "when a party has
taken affirmative steps to conceal material facts from the other

. . . [and (3)] where one party has knowledge of a latent defect in the subject matter of the negotiations . . . ." Id. at 298, 344 S.E.2d at 119. A party takes affirmative steps to conceal when he actively represents a state of affairs that is not true. See Ragsdale v. Kennedy, 286 N.C. 130, 139–40, 209 S.E.2d 494, 500–01 (1974) ("When plaintiff undertook to describe the business as a 'gold mine' and a 'going concern' he incurred a concomitant duty to make a full disclosure of any extenuating financial circumstances which counteracted his positive assertions."). Here, on the other hand, Plaintiff does not allege that Defendants affirmatively misled Plaintiff about their financial condition by making such a positive assertion. The "latent defect" rule is also not applicable to this case. Therefore, Plaintiff can establish the requisite duty for its omission-based fraud claim only by plausibly alleging the existence of a fiduciary relationship.

Plaintiff argues that a fiduciary relationship arose under PACA. Specifically, Plaintiff states that "Defendants owed a duty to Plaintiff, as trustees of food, and proceeds of food sold under" PACA. (Compl. (Doc. 2) ¶ 34.) Plaintiff further alleges it "has complied in all ways with its responsibilities under PACA." (Id. ¶ 11.) Defendants argue in response that, because Plaintiff has not specifically alleged that Plaintiff

gave the required notice to preserve PACA trust benefits, Plaintiff has failed to allege any fiduciary duty or relationship. (Defs.' Br. (Doc. 7) at 7–8.)

Defendants argue that this court is not bound by the "legal conclusion" that Plaintiff has complied with the requirements to create a PACA trust. (Id. at 8.) While Defendants are correct that legal conclusions are insufficient to plausibly allege a cause of action, Plaintiff's allegation is a conclusion of fact rather than a conclusion of law. Had Plaintiff simply alleged that "Defendants have a fiduciary duty to Plaintiff," this statement would represent a legal conclusion. However, this court finds that Plaintiff's allegation, while lacking specificity and clearly insufficient for summary judgment, provides a basis at this stage to plausibly infer that Plaintiff gave the necessary PACA notice to Defendants. See Feminist Majority Found. v. Hurley, 911 F.3d 674, 685 (4th Cir. 2018) (this court must "accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiff[]"). This finding also comports with the general principle that PACA "should [be] liberally construe[d] . . . in favor of produce sellers." See Hull Co. v. Hauser's Foods, Inc., 924 F.2d 777, 783 (8th Cir. 1991) ("Requiring strict compliance

with the regulation would thwart the remedial nature of the statute. This we refuse to do.").

PACA trust obligations impose a fiduciary duty on both the corporate buyer and individual officers or directors of the corporation. See Weis-Buy Servs., Inc. v. Paglia, 411 F.3d 415, 420-22 (3d Cir. 2005) (collecting cases); Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 282-83 (9th Cir. 1997); Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F. Supp. 346, 348 (S.D.N.Y. 1993) ("[A] PACA trust in effect imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier."). This court thus finds that Plaintiff has plausibly alleged the existence of a fiduciary duty, concealment of a material fact, and reasonable reliance on that fact to Plaintiff's detriment. Therefore, Defendants' motion to dismiss Plaintiff's fraud claim will be denied. Based on the above analysis, this court further finds that Plaintiff has stated a claim for constructive fraud and Defendants' motion to dismiss that claim will also be denied.

## C. **Breach of Fiduciary Duty**

"For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." Dalton v. Camp, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001). This

"relationship exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." Link v. Link, 278 N.C. 181, 192, 179 S.E.2d 697, 704 (1971) (quoting Abbitt v. Gregory, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)) (internal quotation marks omitted).

As previously explained, this court finds Plaintiff's allegations sufficient to plausibly infer that Plaintiff was entitled to the PACA statutory protections, which impose a fiduciary duty upon the PACA trustee. Therefore, Defendants' motion to dismiss Plaintiff's breach of fiduciary duty claim will be denied.

### D.  **Conversion**

Under North Carolina law, there are "two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant." Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012). When one party holds property or funds in trust for another party, the beneficiary of the trust generally maintains an ownership interest in the property. See Estate of Redden ex rel. Morley v. Redden, 179 N.C. App. 113, 118–19, 632 S.E.2d 794, 798–99 (2006).

Defendants argue that the "ownership interest" here is imparted solely by the PACA trust and that, therefore, Plaintiff's failure to establish compliance with the notice requirements undermines the conversion claim. However, this court has already found that Plaintiff's allegations are sufficient at this stage to infer compliance. PACA provides that funds:

> shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2). Therefore, this court finds that Plaintiff has alleged an ownership interest in the PACA trust money and has plausibly alleged that Defendants converted that property to their own use. Defendants' motion to dismiss Plaintiff's conversion claim will be denied.

### E.    Unfair and Deceptive Trade Practices

"In order to establish a prima facie claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton, 353 N.C. at 656, 548 S.E.2d at 711. An ordinary breach of contract is not a violation of the

UDTP statute, unless it is "characterized by some type of egregious or aggravating circumstances." Norman Owen Trucking, Inc. v. Morkoski, 131 N.C. App. 168, 177, 506 S.E.2d 267, 273 (1998). Such aggravating circumstances can include "conduct that amounts to an inequitable assertion of [a party's] power or position." Libby Hill Seafood Rests., Inc. v. Owens, 62 N.C. App. 695, 700, 303 S.E.2d 565, 569 (1983).

N.C. Gen. Stat. § 75-1.1 applies only to practices "in or affecting commerce," or relating to "the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized." HAJMM Co. v. House of Raeford Farms, Inc., 328 N.C. 578, 594, 403 S.E.2d 483, 493 (1991).

Here, Defendants argue that Plaintiff has failed to state a UDTP claim because Plaintiff has alleged only "a simple breach of contract" without any aggravating circumstances. (Defs.' Br. (Doc. 7) at 13.) This court, however, finds that under North Carolina law the misappropriation of PACA trust money in violation of a fiduciary duty could plausibly constitute an unfair or deceptive trade practice in or affecting commerce. See White v. Thompson, 196 N.C. App. 568, 574, 676 S.E.2d 104, 109 (2009) ("[B]ecause the jury determined that [the defendant]

breached a fiduciary duty, not a mere contractual duty, we summarily reject his contention that mere breach of contract is insufficient to show an unfair trade practice."), aff'd, 364 N.C. 47, 691 S.E.2d 676 (2010); Sara Lee Corp. v. Carter, 351 N.C. 27, 31-33, 519 S.E.2d 308, 311-12 (1999) (upholding a trial court's judgment for the plaintiffs on their UDTP claim based, primarily, on the alleged breach of a fiduciary duty). Therefore, Defendants' motion to dismiss Plaintiff's claim for unfair and deceptive trade practices will be denied.

####    F.    Piercing the Corporate Veil

In North Carolina, when a "corporation is so operated that it is a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities . . . , the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person." Henderson v. Sec. Mortg. & Fin. Co., 273 N.C. 253, 260, 160 S.E.2d 39, 44 (1968). North Carolina courts look to whether a shareholder had control, in the form of "complete domination," of the company and used that control for some unjust purpose to cause injury. Glenn v. Wagner, 313 N.C. 450, 454-55, 329 S.E.2d 326, 330 (1985). The analysis focuses on four main factors: "(1) Inadequate capitalization, (2) Non-compliance with corporate formalities, (3) Complete domination and control of the

corporation so that it has no independent identity, (4) Excessive fragmentation of a single enterprise into separate corporations." Id. at 455, 329 S.E.2d at 331.

Plaintiff alleges that "Comer and Al-Khori are personally liable, based on piercing the corporate veil of the LLCs."[13] (Compl. (Doc. 2) ¶ 47.) Plaintiff argues that the Individual Defendants should be liable for the acts of Debtor because this corporate entity was their alter ego.[14] (See id.) Defendants, in turn, respond first that Plaintiff has alleged insufficient facts to support piercing the corporate veil to hold the Individual Defendants liable for the acts of Debtor. (Defs.' Br.

_____

[13] While not alleged in the Complaint, Defendants suggest in their briefing that Plaintiff also seeks to employ reverse veil-piercing to hold the LLC Defendants liable for the actions of the individual Defendants. (See Defs.' Br. (Doc. 7) at 15.) This theory "attaches liability to the entity for a judgment against the individuals who hold an ownership interest in that entity." Sky Cable, LLC v. DIRECTV, Inc., 886 F.3d 375, 385 (4th Cir. 2018) (applying Delaware law). Reverse veil-piercing is recognized by North Carolina law and analyzed under the same legal standard as ordinary corporate veil-piercing. See Fischer Inv. Capital, Inc. v. Catawba Dev. Corp., 200 N.C. App. 644, 650-51, 654-57, 689 S.E.2d 143, 147-48, 150-53 (2009).

[14] Plaintiff's allegation appears to apply to the LLC Defendants as well. (Compl. (Doc. 2) ¶ 47.) However, as described further herein, this court finds that Plaintiff has failed to allege any wrongful act or liability incurred by the LLC Defendants for which the Individual Defendants might be liable.

(Doc. 7) at 16–17.) Defendants further argue that, to the extent that Plaintiff seeks to hold the other LLCs liable for the acts of the Individual Defendants by reverse-piercing, Plaintiff has also failed to meet the legal standard. (Id. at 15.) Plaintiff alleges that the Individual Defendants "failed to follow corporate formalities, undercapitalized the LLCs, and used them as alter egos for improper purposes . . . ." (Compl. (Doc. 2) ¶ 7.) Plaintiff suggests that further factual support for piercing the corporate veil appears earlier in the Complaint, but this court finds none. Here, Defendants are correct that Plaintiff has offered merely legal conclusions completely devoid of factual support. While these conclusions are entitled to no weight, this court further recognizes that factual support for piercing the corporate veil is likely in control of Defendants and not readily available to Plaintiff at this stage of the proceedings. Because Defendants' motion to dismiss Plaintiff's other claims will be denied and discovery will move forward, this court finds it appropriate to defer ruling on Plaintiff's piercing the corporate veil claim until trial pursuant to Fed. R. Civ. P. 12(i).

However, this court finds that Plaintiff has insufficiently alleged a reverse veil-piercing claim because the allegation itself refers only to liability for the Individual Defendants

(not the LLC Defendants). (<u>See</u> Compl. (Doc. 2) ¶ 47.) Therefore, the LLC Defendants cannot be held liable for actions by the individual Defendants through reverse veil-piercing. Plaintiff has produced an account statement that lists Debtor under the "Bill To" line, (<u>see</u> Doc. 2-1), and has alleged that Defendants used the trade names Iron Hen Café and Fresh Local Good Foodgroup. (Compl. (Doc. 2) ¶ 6.) Plaintiff has also filed a copy of a personal guarantee signed by each of the Individual Defendants. (<u>See</u> Compl. Ex. B (Doc. 2-2).) Plaintiff fails to allege, however, in what way the LLC Defendants either participated in the alleged fraud or had anything to do with the facts surrounding this case. Therefore, this court finds that the LLC Defendants could be liable only under a reverse veil-piercing analysis, which Plaintiff has insufficiently pled. All claims against Comer-Khori, LLC, Ferrell Group, LLC, Murray-Comer-Khori, LLC, HJHN Properties, LLC, and Barn 3202, LLC, should be dismissed, and Defendants' motion to dismiss these claims will be granted.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, this court finds that Plaintiff's motion to remand should be denied. This court further finds that Defendants' motion to dismiss should be granted in part and denied in part.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand, (Doc. 8), is **DENIED,** and that Plaintiff's request for an award of attorney's fees pursuant to 28 U.S.C. § 1447(c) is **DENIED.**

**IT FURTHER ORDERED** that Defendants' Motion to Dismiss, (Doc. 5), is **GRANTED IN PART AND DENIED IN PART,** in that the motion to dismiss Plaintiff's claims against Defendants Comer-Khori, LLC, Ferrell Group LLC, Murray-Comer-Khori, LLC, HJHN Properties, LLC, and Barn 3203, LLC, is **GRANTED** and these parties are hereby **TERMINATED,** and the motion to dismiss certain of Plaintiff's claims against Defendants Brandy Lee Comer, Fareed Al-Khori, Comer Khori LLC, Iron Hen Café, and Fresh Local Good Food Group is **DENIED.**

**IT FURTHER ORDERED** that a ruling on Defendants' Motion to Dismiss, (Doc. 5), Plaintiff's claim for piercing the corporate veil to hold Defendants Brandy Lee Comer and Fareed Al-Khori personally liable for the actions of Defendant Comer Khori LLC is **DEFERRED** until trial pursuant to Fed. R. Civ. P. 12(i).

This the 26th day of March, 2019.

_____
United States District Judge